IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL LEWIS,<br><br>          Plaintiff,<br><br>     v.<br><br>BAYER CORPORATION,<br><br>          Defendant._____/ | No. C-03-4403 JSW (EDL)<br><br>REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES |

On September 30, 2003, Plaintiff filed this employment discrimination action alleging race and gender discrimination and a hostile work environment after Defendant terminated Plaintiff from her position as a biological technician. On November 2, 2005, Judge White granted summary judgment in favor of Defendant. Defendant, as the prevailing party, now seeks an award of its fees against Plaintiff pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(k)), and the California Fair Employment and Housing Act (Cal. Gov't Code § 12965(b)), arguing that Plaintiff's lawsuit was frivolous, and against Plaintiff's attorneys pursuant to 28 U.S.C. § 1927 and against Plaintiff and her counsel pursuant to the Court's inherent power, arguing that they acted in bad faith in pursuing this case.  See Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (holding that a court "may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith."); Cummings v. Benco Building Servs., 11 Cal.App.4th 1383 (1992) (adopting the Christianburg standard for FEHA cases); 28 U.S.C. § 1927 (any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

incurred because of such conduct."); Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991) (a fee award against counsel based on the court's inherent power requires a specific finding that counsel's conduct constituted bad faith). Plaintiff opposed Defendant's motion and Defendant filed a reply. At the January 17, 2006 hearing, the Court ordered Defendant to submit billing records and permitted Plaintiff's counsel to file a response to the records.

The parties provided copies of Judge White's summary judgment order and a partial transcript of the summary judgment hearing. In his Order, Judge White stated that, although the burden for establishing a prima facie case of race or gender discrimination is an easy one to satisfy, Plaintiff had failed to do so. Nov. 2, 2005 Order at 5:23-24. The summary judgment order indicates that Plaintiff's case was weak. Further, at the hearing, Judge White stated:

> No depositions were taken by plaintiff's counsel, which indicates, I think, their belief that this case has no basis in fact. It will not see the light of day in this Court. . . . And the Court only regrets that it doesn't have the authority to sanction plaintiff and her counsel for bringing this case. The cost of this case, one can only shudder to think what it cost Bayer and can only lead the Court to believe that these are the kinds of cases that result in society paying higher costs, including for their prescription drugs, because of these frivolous lawsuits.

Declaration of Jerome Schreibstein Ex. C at 13:19-22; 14:1-7.

Based on the Court's review of the November 2, 2005 Order and the hearing transcript, it appears that Judge White has already reached a decision regarding the frivolousness of Plaintiff's lawsuit. Indeed, he was in the best position to make such a finding. This Court does not believe that Judge White is asking this Court to revisit the issue of frivolousness, which would require an independent review of the entire record and in particular, the summary judgment filings. Instead, this Court believes that its role is to recommend an amount of sanctions and to determine whether sanctions should be awarded against Plaintiff's attorneys as well as Plaintiff herself.

Defendant originally sought an award of its fees for the entire case, which exceed $116,000, but conceded at the hearing that an award of the fees incurred after Plaintiff's August 2, 2005 deposition would be appropriate, even if the award were only a symbolic amount in view of Plaintiff's limited means. Defendant sees Plaintiff's deposition as a turning point in this case because she testified that she had no evidence that any of her discipline was motivated by discrimination. See, e.g., Lewis Dep. at 55:8-13 ("Q: Do you have any information that Mr. Sanchez

was motivated by your race in issuing this discipline?  A: No, I have no information on that.  Q: Do you have any information that Mr. Sanchez was motivated by your gender in issuing this discipline?  A. No.").  Accordingly, Defendant argues that Plaintiff improperly proceeded with this lawsuit even after it became clear through her deposition that Plaintiff had no evidence to support her claims.

The Court agrees that an award of fees should not be based on the entire life of the case, but on the post-deposition time period, which largely comprises the time and cost of preparing and bringing the successful summary judgment motion and obtaining an independent medical examination.  However, the Court does not recommend awarding the entire amount of fees incurred after Plaintiff's deposition.  First, although Plaintiff's case was weak, she did at least point to some facts suggesting that purportedly similarly situated employees were treated differently, although the evidence that she sought to rely on included inadmissible hearsay, lacked foundation or was otherwise insufficient to survive summary judgment.  For example, Plaintiff stated in her declaration in opposition to Defendant's summary judgment motion that she was disciplined for sleeping at work, while male workers were not disciplined for sleeping.  Lewis Decl. ¶ 7, Ex. A at ¶ 7.  Plaintiff also testified in her deposition and in her declaration opposing summary judgment that a white female employee was not disciplined for making an error that resulted in a moderate deviation of a product that led to its quarantine, while Plaintiff was disciplined for using the wrong component in a buffer that did not result in loss of production lot.  Lewis Decl. ¶ 7, Ex. A at ¶ 10; Lewis Dep. at 140:5-143:18.  Indeed, Judge White noted in his summary judgment order that "additional discovery by Plaintiff could, possibly, have demonstrated the requisite similarity."  Nov. 2, 2005 Order at 7, n. 2.

Second, in opposition to this motion, Plaintiff submitted a declaration stating that when she was asked in her deposition whether she had any information that an individual was motivated by her race in issuing discipline, she only meant that she "had no information as to the particular person's state of mind," not that she did not believe that she suffered discrimination.  Lewis Decl. ¶ 8.  Although the Court must be cautious about quickly crediting "post hoc" rationalizations, Plaintiff's deposition testimony must be assessed in context and in light of her status as a lay person, unschooled in legal niceties such as the difference between circumstantial and direct evidence.

3

1  Indeed, in her deposition, she testified to incidents that she could reasonably believe constituted
2  more favorable treatment of white and/or male employees who were similarly situated to her. See
3  also Lewis Decl. Ex. A at ¶ 6. Thus, Plaintiff's explanation has some plausibility. Although
4  Plaintiff's opposition to summary judgment fell short, Plaintiff's deposition by itself did not
5  necessarily establish that her case was frivolous. Rather, her failure to pursue additional discovery,
6  which her deposition revealed would be necessary to determine whether she could raise a triable
7  issue of fact, was the real turning point.

8  Most importantly, Plaintiff has very limited financial means. Her modest monthly income is
9  used entirely to support herself and three minor children. Lewis Decl. ¶ 2. She only has $3,000 in
10 savings (Lewis Decl. ¶ 5), and has already been assessed $2,091 in costs owed to Defendant in this
11 case. See Response of Pl. to Def.'s Billing Records at 2:2-3 (". . . plaintiff's financial situation is
12 such that an award of fees would subject her to financial ruin."). The Ninth Circuit has held that a
13 district court should consider the financial resources of the plaintiff in determining the amount of
14 fees to award a prevailing defendant. Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir.
15 1988).

16 In her response to Defendant's submission of its billing records, Plaintiff argues that the time
17 spent and the fees sought by Defendant are excessive. Response of Pl. to Def.'s Billing Records at ¶
18 2:10-11. The Court has reviewed the records and does not find that the amount sought is necessarily
19 excessive. However, because the Court recommends an award of fees in an amount that is so far
20 less than the total amount sought that it clearly is not excessive, the Court need not reach the issue of
21 the reasonableness of the total amount of fees sought.

22
23 Assuming that Judge White has determined that Plaintiff's case meets the Christianburg
24 standard for frivolousness, and taking into account Plaintiff's financial condition and her attempts to
25 offer evidence of discrimination, this Court recommends a fee award of $5,000 against Plaintiff
26 pursuant to Title VII and the state Fair Employment and Housing Act. Although this amount is only
27 a part of the fees incurred by Defendant since Plaintiff's deposition, it reflects the reality of
28 Plaintiff's inability to pay.

4

The Court concludes that there has not been a sufficient showing of subjective bad faith by counsel or Plaintiff to justify an award pursuant to 28 U.S.C. § 1927 or the Court's inherent power. Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995) (holding that sanctions under § 1927 must be supported by a finding of subjective bad faith, which is "present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."); In re Itel Securities Litigation, 791 F.2d 672, 675 (9th Cir. 1986) ("For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar assessment of attorney's fees.'") (quoting Lipsig v. National Student Marketing Corp, 663 F.2d 178, 181 (D.C. Cir. 1980)).  The Court does not find subjective bad faith on the part of Plaintiff herself, who is not an attorney and had to rely on her attorneys' advice as to whether her case had sufficient merit to pursue through summary judgment.  As noted above, she had at least some basis for her subjective belief that she was discriminated against, even if she was mistaken.  There is no evidence that Plaintiff was motivated by vindictiveness or other improper purpose.  Lewis Decl. ¶¶ 7, 9 (Plaintiff brought this action in good faith because she believed she was subjected to discrimination because she was disciplined for the same or similar conduct for which white or male co-workers were not similarly disciplined).

The question whether sanctions should be awarded against her attorneys is a closer one. Defendant argues that Plaintiff's counsel recklessly or vindictively continued with this litigation once it became clear after Plaintiff's deposition that there was no evidence of discrimination.  On the one hand, counsel's failure to take any depositions or otherwise acquire admissible evidence sufficient to raise a triable issue of fact that the other employees to whom Plaintiff compared herself were in fact similarly situated is disturbing.  After Plaintiff's deposition, counsel should have more carefully and critically analyzed potential proof problems in this case.  On the other hand, Plaintiff's counsel stated in declarations and at the hearing that they actually believed that they were proceeding in good faith and that they had enough evidence to survive summary judgment, and referenced some reasons supporting that belief.  See, e.g., Moore Decl. ¶¶ 13-18 (counsel believed

5

the case had merit; counsel believed Plaintiff's discipline was discriminatory; another Bayer employee told counsel that Bayer had a certain way of dealing with minorities, which counsel took to be negative and discriminatory; Plaintiff was not going to receive much money even if she prevailed so counsel believed she was serious about vindicating her rights); Ralston Decl. ¶ 7 (counsel believed case had merit and was not brought in bad faith); see also Woods Decl. in Support of Opp'n to Summ. J. at ¶ 4 (stating that the Director of Fermentation, Purification and Media Department at Bayer said that Bayer had a "special way of dealing with minorities").  Counsel should take this occasion as a "wake up call" to more carefully evaluate cases in the future both at the outset and if and when discovery, motions or other developments reveal serious weaknesses, including problems of proof.  On balance, however, this Court does not conclude that Defendant has met the high threshold required to establish subjective bad faith on the part of Plaintiff's counsel.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy .  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the district court's order.

Dated: February 9, 2006

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

6